UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JESSE J. HOLOVACKO,<br><br>Defendant. | Criminal Action No. 16-349 (MAS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendant Jesse J. Holovacko's ("Defendant") Motion for New Trial pursuant to Federal Rule of Criminal Procedure 33(a) ("Rule 33(a)") and Motion for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29(c) ("Rule 29(c)"). (ECF No. 58-1.) The United States of America (the "Government") filed opposition (ECF No. 60), and Defendant replied (ECF No. 61). The Court has carefully considered the parties' submissions and decides the matter without oral argument. For the reasons set forth below, the Court denies Defendant's Motion for New Trial and Motion for Judgment of Acquittal.

**I.   Background**

Defendant was indicted on seven counts, including six counts of wire fraud and one count of investment advisor fraud. (Indictment, ECF No. 13.) The trial began on April 24, 2017 and concluded on April 28, 2017. (ECF Nos. 40, 41, 42, 43, 46.) On April 28, 2017, the jury returned a guilty verdict on all seven counts of the indictment. (Jury Verdict 1-3, ECF No. 50.) While presenting its case, the Government called as a witness Jeremy Hutson (the "Witness"), the Senior Vice President/Senior Internal Investigator for Bank of America Merrill Lynch ("Merrill Lynch"). (Apr. 26, 2017 Tr. 50:21-25, ECF No. 55.) During the direct examination of the

Witness, the Government asked about an investigation he conducted involving Merrill Lynch and the investment accounts of Defendant and Stanley Klimek (the "Client"). (Apr. 26, 2017 Tr. 53:2-91:20.)

During his testimony, the Witness stated that he initiated the internal investigation after "[r]eceiv[ing] a request for investigation or an alert" from Merrill Lynch's Internal Fraud Detection Unit ("IFDU"). (*Id.* at 53:6-54:15.) The Witness reviewed "the contents of the report from [IFDU]," reviewed the Client and Defendant's account activity, and "submitted a request to the cyber forensics department [at Merrill Lynch] for assistance with [his] review." (*Id.* at 54:5-15, 55:21-56:2.) "After reviewing what cyber forensics had come back with," the Witness again researched the activity in the Client and Defendant's accounts. (*Id.* at 56:24-57:3.) The Witness explained that he researched the account activity "[b]ecause the activity that [he] saw in both accounts pretty much answered a lot of questions that [he] was researching." (*Id.* at 57:4-8.) Based on his research of the accounts, the Witness testified that "[i]t was pretty obvious to [him] that there was misappropriation of assets." (*Id.* at 57:9-12.) Defense counsel shortly thereafter[1] requested a sidebar and objected to the testimony, arguing that it "render[ed] an opinion as to the ultimate issue of whether [Defendant] in fact misappropriated assets." (*Id.* at 59:5-7.) The Court heard defense counsel's argument and determined that the testimony was not improper opinion testimony.[2] (*Id.* at 61:12-63:20.)

---

[1] Defense counsel did not immediately object. The Government asked the Witness three additional questions before defense counsel objected. (*See* Apr. 26, 2017 Tr. 57:13-58:3.)

[2] The Court qualified its determination on the matter, noting that it was "concerned that [the Government's direct examination was] approaching [the Witness] being able to render some kind of opinion, and that certainly would be inappropriate," but that it was "early enough in [the Government's] examination where [the Government did] not cross[] that line." (Apr. 26, 2017 Tr. 61:17-22.)

2

## II. Parties' Positions

### A. Motion for New Trial

Defendant argues that "[t]he [G]overnment's improper introduction of [the Witness's] opinion testimony severely prejudiced . . . [D]efendant and warrants a new trial." (Def.'s Moving Br. 2.) Defendant contends that the Witness's testimony regarding misappropriation of assets was lay opinion because the Witness was not offered as an expert. (*Id.*) As such, Defendant asserts that this lay opinion violated Federal Rule of Evidence 701 ("Rule 701") because it "was not founded on personal knowledge[,] but based, in part, upon a review [of] work product of third parties. . . . which contained inadmissible hearsay." (*Id.* at 3.) Defendant further argues that the Witness's testimony "regarding 'misappropriation of assets' amounted to directing the jury to find a misappropriation." (*Id.*) According to Defendant, the Witness's testimony that the misappropriation was "pretty obvious" unfairly prejudiced Defendant. (*Id.*)

The Government argues that the Witness's testimony was admissible under Rule 701 because it "was rationally based on [the Witness's] perception." (Gov't's Opp'n Br. 3, ECF No. 60.) The Government contends that the Witness "testified regarding his personal research and review of . . . [D]efendant's bank and brokerage account records as well as [the] Client's bank records." (*Id.*) In addition, the Government argues that the Witness's testimony "was also based on his role as an internal investigator for [Merrill Lynch] and his experience conducting internal investigations for [Merrill Lynch]." (*Id.* at 4.) As such, the Government argues that the Witness "had particularized knowledge by virtue of his experience and testified from personal knowledge of documents he reviewed." (*Id.*)

The Government further asserts that, even if the Witness's testimony was inadmissible, Defendant has not shown that the testimony was unduly prejudicial or that it had a substantial

3

influence on the jury's deliberations and the outcome of the trial. (*Id.* at 5.) Additionally, the Government states that it never referenced the Witness's conclusion of misappropriation during summations, and "instead emphasize[d] that the jury's verdict depended on whether the jury credited or discredited the Client's testimony and/or . . . [D]efendant's testimony regarding why the Client gave . . . [D]efendant the cashier's checks." (*Id.* at 6.) Accordingly, the Government argues that if admission of the testimony was in error, it did not have a substantial influence on the jury's deliberations or outcome of the trial. (*Id.*)

### B. Motion for Judgment of Acquittal

At trial, Defendant moved for a judgment of acquittal under Rule 29(c) and now renews his Rule 29(c) motion. (Def.'s Moving Br. 4.) Defendant relies upon the arguments presented in his original Rule 29(c) motion. (*Id.*) In opposition, the Government summarizes the evidence introduced against Defendant at trial, and argues that the evidence adequately supports the jury's verdict of guilty beyond a reasonable doubt on all counts. (Gov't's Opp'n Br. 6-7.)

### III. Legal Standard

### A. Motion for New Trial

Pursuant to Rule 33(a), "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A court should grant a motion for a new trial only when "there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *United States v. Hamilton*, No. 05-876, 2010 WL 1027412, at *1 (D.N.J. Mar. 18, 2010) (quoting *United States v. Brennan*, 326 F.3d 176, 189 (3d Cir. 2003)). When an error has allegedly been committed at trial, "[a] new trial is required on this basis only when 'the [] errors, when combined, so infected the jury's deliberations that they had

a substantial influence on the outcome of the trial.'" *United States v. Copple*, 24 F.3d 535, 550 n.17 (3d Cir. 1994) (second alteration in original) (citation omitted).

### B. Motion for Judgment of Acquittal

"Under Rule 29, a defendant who asserts that there was insufficient evidence to sustain a conviction shoulders 'a very heavy burden.'" *United States v. Tiangco*, 225 F. Supp. 3d 274, 278-79 (D.N.J. 2016) (quoting *United States v. Anderson*, 108 F.3d 478, 481 (3d Cir. 1997)). "The Court cannot substitute its judgment for that of the jury." *Id.* at 279. Rather, the Court "must view the evidence, and all reasonable inferences therefrom, in the light most favorable to the prosecution, resolving all credibility issues in the prosecution's favor." *Id.* "Having done so, the [C]ourt must uphold the conviction if '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

## IV. Discussion

### A. Motion for New Trial

#### 1. Admissibility of Opinion Testimony Under Rule 701

Under Rule 701, a lay witness may give opinion testimony where it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. "In layman's terms, Rule 701 means that a witness is only permitted to give [his] opinion or interpretation of an event when []he has some personal knowledge of that incident." *United States v. Fulton*, 837 F.3d 281, 291 (3d Cir. 2016). "Importantly, the rule is carefully designed to exclude lay opinion testimony that

5

'amounts to little more than choosing up sides, or that merely tells the jury what result to reach.'" *Id.* (citation omitted).

A witness who testifies about business operations may make inferences based on his perception of business records, or may provide his perception and knowledge of day-to-day affairs of the business. *See United States v. Polishan*, 336 F.3d 234, 242 (3d Cir. 2003). Furthermore, a witness may draw inferences based on business records or information acquired from professional colleagues. *United States v. Eady*, 648 F. App'x 188, 190 (3d Cir. 2016). Lay opinion testimony may incorporate reports or documents prepared by others where the witness "still possess[es] the requisite personal knowledge or foundation to render his lay opinion admissible under [Rule 701]." *Lightning Lube v. Witco Corp.*, 802 F. Supp. 1180, 1193 (D.N.J. 1992).

Here, Defendant challenges the first prong under Rule 701, arguing that "the [W]itness's testimony [determining] that there was misappropriation was not founded on personal knowledge but based, in part, upon a review [of] work product of third parties." (Def.'s Moving Br. 3.) The Witness's testimony, however, was rationally based on his personal perception. Primarily, the Witness testified about his role as an internal investigator and his experience conducting internal investigations for Merrill Lynch. (Apr. 26, 2017 Tr. 52:1-13.) The Witness then testified that after he received the initial report from IFDU, he "reviewed the activity for [him]self." (*Id.* at 55:21-56:2.) The Witness testified that he then reached out to cyber forensics because "the activity that [he] saw in [his] review was concerning." (*Id.* at 56:13-17.) Thereafter, the Witness testified that cyber forensics provided the Witness with its own report concerning the account activity. (*Id.* at 56:18-21.) After reviewing the cyber forensics report, the Witness subsequently "researched [the Client and Defendant's] accounts again." (*Id.* at 57:1-3.). When asked why he

6

was researching the accounts, the Witness answered: "Because the activity that I saw in both accounts pretty much answered a lot of questions that I was researching. . . . It was pretty obvious to me that there was misappropriation of assets." (*Id.* at 57:4-12.)

In sum, the Witness testified that (1) IFDU's alert prompted the Witness's investigation; (2) the Witness personally reviewed the activity for himself; (3) the Witness subsequently asked cyber forensics for assistance; and (4) the Witness personally researched the accounts again before concluding that misappropriation of assets had occurred. (*Id.* at 53:6-57:12.) Accordingly, the Court finds that the Witness possessed the requisite personal knowledge to render his opinion admissible under Rule 701.

2. Even if the Court Erred, the Error Was Not Substantial Enough to Warrant a New Trial

When an error has allegedly been committed at trial, "[a] new trial is required on this basis only when 'the error [] . . . so infected the jury's deliberations that [it] had a substantial influence on the outcome of the trial.'" *Copple*, 24 F.3d at 550 n.17 (second alteration in original) (citation omitted). "Trial error is harmless if it is highly probable that the error did not affect the judgment." *Id.* at 546 (citing *United States v. Simon*, 995 F.2d 1236, 1244 (3d Cir. 1993)). "High probability exists if the court has a 'sure conviction that the error did not prejudice the defendant.'" *Id.* (citation omitted). The factors to be examined in determining whether a defendant was prejudiced are "the scope of the comments and their relationship to the proceeding, the extent of any curative instructions, and the strength of the evidence against the defendant[]." *United States v. Dispoz-O-Plastics, Inc.*, 172 F.3d 275, 286 (3d Cir. 1999).

There is, however, no need to disprove "every 'reasonable possibility of prejudice.'" *Simon*, 995 F.2d at 1244 (citation omitted). Accordingly, even if evidence has been improperly admitted, a court may "nevertheless conclude that the error was harmless given the truly

overwhelming quantity of legitimate evidence against [the] [defendant]." *United States v. Christie*, 624 F.3d 558, 571 (3d Cir. 2010); *see also United States v. Anderskow*, 88 F.3d 245, 251 (3d Cir. 1996) (finding that erroneous admission of testimony under Rule 701 was harmless error where the government did not rely on the testimony in summations and the evidence against the defendant was "overwhelming").

Here, even if the Court had erred in admitting the testimony, the Court finds that the error did not prejudice Defendant. The testimony that Defendant argues severely prejudiced him was brief, as the Witness's statement was in response to one question, and was referenced in only two subsequent questions before defense counsel objected. (*See* April 26, 2017 Tr. 57:9-58:1.) Additionally, the Government presented an overwhelming amount of evidence against Defendant to support the jury's finding that Defendant inappropriately used the Client's money. The Government offered testimony from: (1) the Client; (2) a manager of the bank who witnessed the Client withdraw cashier's checks; (3) the Witness; and (4) Defendant's direct supervisor at Merrill Lynch. (*See generally* ECF Nos. 54, 55, 56, 57.) Furthermore, the Government did not rely on the Witness's statement in summations, and instead pointed to the strength of the evidence, which indicated that Defendant lied to the Client in order to obtain the Client's money for his personal use. (April 27, 2017 Tr. 82:18-23, ECF No. 56.) Accordingly, the Court finds that it is highly improbable that the purportedly impermissible testimony prejudiced Defendant and, therefore, denies Defendant's Motion for New Trial.

**B.  Motion for Judgment of Acquittal**

In support of Defendant's renewed Rule 29(c) Motion for Judgment of Acquittal, Defendant relies on the arguments presented to the Court at the conclusion of trial. (*See* May 1, 2017 Tr. 10:18-12:12, ECF No. 56.) The Court has reviewed the parties' submissions and the

arguments presented at trial and, for the reasons set forth on the record at the conclusion of trial,[3] the Court denies Defendant's Motion for Judgment of Acquittal. (*See id.* at 18:14-22.)

## V.     Conclusion

For the reasons set forth above, Defendant's Motion for New Trial is DENIED. An order consistent with this Memorandum Opinion will be entered.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

**Dated:** July 26, 2017

---

[3] The Court stated: "[T]his matter does come down ultimately to a determination on issues that are really within the province of the jury. It really calls for the Court to make credibility determinations as well as to make inferences that come from the facts, all of which are outside the province of the [C]ourt. And for those reasons[,] the Court is going to deny the Rule 29 motion and we'll proceed from here." (*See* May 1, 2017 Tr. 18:14-22.)